**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF UNION DES ASSOCIATIONS EUROPÉENNES DE FOOTBALL ("UEFA") FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING | Case No. 26-mc-00431-JAV |

**APPLICANT UNION DES ASSOCIATIONS EUROPÉENNES DE FOOTBALL'S OPPOSITION TO FIFA (AMERICAS) INC. AND FWC2026 US, INC.'S MOTION TO INTERVENE**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 3

ARGUMENT .......... 6

I. FIFA US CANNOT SATISFY THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT UNDER RULE 24(A) .......... 6

A. FIFA US Does Not Have a Direct Interest in UEFA's Application .......... 7

B. FIFA US Does Not Have a Direct Interest in the Discovery Requested .......... 8

C. Thrive and Kushner Are Already Represented by Capable, Well-Resourced Counsel .......... 10

II. PERMISSIVE INTERVENTION IS IMPROPER BECAUSE IT WOULD UNDULY DELAY AND PREJUDICE UEFA'S RIGHTS .......... 11

A. FIFA US's Proposal Departs From This District's Settled *Ex Parte* Procedure .......... 12

B. FIFA US's Proposal Would Cause the Very Delay and Prejudice Rule 24(b)(3) Is Designed to Prevent .......... 13

CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proc.*, 773 F.3d 456 (2d Cir. 2014)....................14

*In re Application of Grupo Unidos por el Canal S.A.*, 2015 WL 1815251 (N.D. Cal. Apr. 21, 2015) ....................18

*Application of Sarrio, S.A.*, 119 F.3d 143 (2d Cir. 1997)....................7

*Barnes v. Security Life of Denver Ins. Co.*, 945 F.3d 1112 (10th Cir. 2019) ....................6

*In re BM Brazil 1 Fundo de Investimento em Participações Multistratégia*, 2024 WL 555780, at *6 (S.D.N.Y. Jan. 18, 2024) ....................7

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001)....................11

*Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, 2026 WL 1078381 (S.D.N.Y. Apr. 21, 2026)....................6

*Det. Watch Network v. U.S. Immigr. & Customs Enf't*, 2016 WL 11793613 (S.D.N.Y. Sept. 1, 2016)....................9

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136 (2d Cir. 2022) ....................15

*Floyd v. City of New York*, 770 F.3d 1051 (2d Cir. 2014)....................6

*In re Fundo de Investimento em Direitos Creditórios Não Padronizados*, 2026 WL 851348 (S.D.N.Y. Mar. 27, 2026) ....................12

*Girard St. Inv. Holdings LLC v. Petroleos de Venezuela, S.A.*, 2024 WL 4556124 (S.D.N.Y. Oct. 23, 2024)....................13

*In re Guriev*, 2025 WL 2381702 (S.D.N.Y. Aug. 15, 2025)....................12

*Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012) ....................12

*In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*,
2015 WL 4040420 (S.D.N.Y. June 29, 2015) ....................18

*In re Holocaust Victim Assets Litig.*,
225 F.3d 191 (2d Cir. 2000)....................11

*In re Hornbeam Corp.*,
2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015)....................8

*In re Hornbeam Corp.*,
722 F. App'x 7 (2d Cir. 2018) ....................12

*In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955 (S.D.N.Y. July 9, 2014) ....................18

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)....................13, 14

*In re Jagodzinski*,
2019 WL 1112389 (S.D. Fla. Jan. 15, 2019) ....................18

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)....................14, 17

*Mehr v. Fédération Internationale de Football Ass'n*,
115 F. Supp. 3d 1035 (N.D. Cal. 2015) ....................1

*Palivos v. Fédération Internationale de Football Ass'n*,
2016 WL 4059360 (D. Nev. July 27, 2016) ....................1

*In re Polymer Sols. Int'l, Inc.*,
2019 WL 1239778 (D. Md. Mar. 18, 2019)....................9

*In re Postalis*,
2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018) ....................18

*Puerto Rico Soccer League NFP, Corp. v. Federación Puertorriqueña de Fútbol*,
2025 WL 745010 (D.P.R. Mar. 7, 2025) ....................1

*Republic of the Phil. v. Abaya*,
312 F.R.D. 119 (S.D.N.Y. 2015) ....................10

*Restor-A-Dent Dental Lab'ys, Inc. v. Certified Alloy Prods., Inc.*,
725 F.2d 871 (2d Cir. 1984)....................6, 9, 10

*In re SBK Art LLC*,
168 F.4th 68 (2d Cir. 2026) ....................12

*SEC v. Berman*,
2021 WL 2895148 (S.D.N.Y. June 8, 2021) ....................11

*Siasia v. Fédération Internationale de Football Ass'n*,
2021 WL 5042974 (S.D.N.Y. Oct. 29, 2021) ....................1

*In re Sri Trang Gloves (Thailand) Pub. Co.*,
2025 WL 2411137 (S.D.N.Y. Aug. 20, 2025) ....................12

*U.S. Postal Serv. v. Brennan*, 579 F.2d 188 (2d Cir. 1978) ....................11

*Vazman, S.A. v. Fidelity Int'l Bank*,
418 F. Supp. 1084 (S.D.N.Y. 1976) ....................6, 9, 10

*IN RE: VSMPO-AVISMA CORP.*,
2026 WL 2272759 (S.D.N.Y. May 26, 2026) ....................15

*In re Youngpoong Corp.*,
2025 WL 3228034 (S.D.N.Y. Nov. 19, 2025) ....................12

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
596 U.S. 619 (2022) ....................17

**Statutes**

28 U.S.C. § 1782 .................... *passim*

Swiss Criminal Code art. 158 .................... *passim*

Swiss Criminal Procedure Code art. 301 ....................17, 18

**Rules**

Federal Rule of Civil Procedure 24 .................... *passim*

**PRELIMINARY STATEMENT**

Applicant Union des Associations Européennes de Football ("UEFA") respectfully submits this Opposition to the Motion to Intervene ("Motion") filed by Proposed Intervenors FIFA (Americas), Inc. and FWC2026 US, Inc. (together, "FIFA US"), and requests that the Court deny the Motion, which asks this Court to permit FIFA US to intervene in and oppose UEFA's *ex parte* Application under 28 U.S.C. § 1782 seeking discovery, through subpoenas *duces tecum* and *ad testificandum* (the "subpoenas"), from Thrive Capital Management, LLC ("Thrive") and Joshua Kushner ("Kushner") for use in a contemplated Swiss criminal proceeding against Gianni Infantino, the president of Fédération Internationale de Football Association ("FIFA").

FIFA US casts its Motion as a routine procedural accommodation to merely "protect its interests[.]" Mot. at 12. In reality, it is nothing of the kind. Instead, through its Motion, FIFA US asks this Court to depart from this District's well settled *ex parte* § 1782 procedure and to install, in its place, a bespoke three-round briefing sequence in which FIFA US would be heard on the merits of UEFA's Application before the Court has even ruled on it—let alone before the Application's discovery targets have been served with the requested Subpoenas. Neither the Second Circuit nor courts in this district follow that approach.

Nor is that FIFA US's only departure from settled law. FIFA US also glides past well-established principles of corporate separateness to spare its parent company, FIFA, the obligation to appear in a United States district court in its own name. Indeed, FIFA regularly refuses to submit to the jurisdiction of U.S. courts when named as a defendant.[1] Yet now, faced with U.S.-based

[1] *See, e.g.*, *Mehr v. Fédération Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1046–54 (N.D. Cal. 2015); *Palivos v. Fédération Internationale de Football Ass'n*, 2016 WL 4059360, at *1 (D. Nev. July 27, 2016); *Siasia v. Fédération Internationale de Football Ass'n*, 2021 WL 5042974, at *4 (S.D.N.Y. Oct. 29, 2021), *aff'd*, 2023 WL 405762 (2d Cir. Jan. 26, 2023) (summary order); *Puerto Rico Soccer League NFP, Corp. v. Federación Puertorriqueña de Fútbol*, 2025 WL 745010, at *1–8 (D.P.R. Mar. 7, 2025).

evidence that Swiss prosecutors may use to hold Infantino and other FIFA officials to account for the FIFA Forward Enterprise ("FFE") proposal, FIFA claims protectable interests worth defending in U.S. court, but declines to appear to defend them itself. If anyone had a claim to seek intervention here, it would be Infantino, the actual target of UEFA's contemplated Swiss proceeding—not FIFA's U.S. subsidiaries two steps removed from Infantino, which will not be the subject of any Swiss proceeding. Yet neither Infantino nor FIFA has moved to intervene.

Instead, it appears, FIFA has enlisted two U.S. subsidiaries to attempt to serve as proxies for its and Infantino's purported interests, and the Motion is candid about it. FIFA US contends that "as the U.S. subsidiary of FIFA, FIFA U.S. is the only entity capable of presenting ***FIFA's interest*** in the purported Swiss criminal proceedings," Mot. at 8; that its own "legally protectable interest arises from its role ***in presenting*** [***FIFA's***] ***interests*** in the United States," Mot. at 10; and that "***FIFA is the only party*** who will be substantially affected by the outcomes of these applications," Mot. at 13 (emphases added). FIFA US, in other words, does not claim an interest of its own; it claims FIFA's. But that is not what Federal Rule of Civil Procedure 24 permits.

For purposes of Rule 24(a)(2), a subsidiary cannot assert its parent's interests as its own—particularly where the parent, having declined to appear here in its own name, now proposes to litigate those interests through two U.S. subsidiaries pressing confidentiality objections that belong, if to anyone, to FIFA. What FIFA US actually seeks, then, is not the vindication of any interest of its own. Rather, it seeks to shield Infantino from the very scrutiny FIFA—a nonprofit membership association that exists to serve and answer to its 211 member associations, including UEFA and its 55 members—has publicly claimed that it welcomes. Just weeks before FIFA US

came to this Court, FIFA's leadership publicly reaffirmed FIFA's commitment to "integrity, good governance and due process."[2] The present Motion is the antithesis of that commitment.

FIFA US's Motion asks this Court to sanction a pre-ruling briefing sequence engineered to delay the efficient and orderly process of seeking U.S.-based discovery in an attempt to keep that relevant evidence from the Swiss authorities to whom UEFA intends to present. And it does so as an improper proxy for Infantino and FIFA, who have not appeared themselves. Rule 24 was not designed to facilitate these maneuvers, and this District's § 1782 procedure was not designed to accommodate it.

FIFA US accordingly satisfies neither the standard for intervention as of right under Rule 24(a) nor the standard for permissive intervention under Rule 24(b). Moreover, its proposed procedure would inject precisely the "undue delay [and] prejudice" Rule 24(b)(3) directs courts to avoid.

## BACKGROUND

On August 27, 2026, UEFA filed its *ex parte* Application pursuant to 28 U.S.C. § 1782, seeking an order authorizing it to serve subpoenas *duces tecum* and subpoenas *ad testificandum* on Thrive and Kushner for use in a contemplated Swiss criminal proceeding to be brought against Infantino, the President of FIFA, in the courts of Switzerland. The Application remains pending before this Court and separate counsel has already appeared on behalf of Thrive and Kushner (despite this being an *ex parte* proceeding and despite the Application having not yet been granted, nor the Subpoenas served).

This Application is one of four § 1782 applications UEFA has filed in three federal district

[2] Luke Baker, *Gianni Infantino Clings to FIFA Presidency After Apologising for 'Mistakes' Over World Cup Sell-Off Plan*, The Independent (Aug. 6, 2026), https:// www. independent.co.uk/sport/ football/gianni-infantino-apology-fifa-resign-mattias-grafstrom-b3028406.html.

courts, each directed at different persons and entities that possess information concerning the FFE proposal—Infantino's failed plan, developed in secret outside FIFA's ordinary governance process, to sell to a private investor consortium a permanent stake in the commercial and operational rights to the FIFA World Cup and FIFA's related events at a depressed sale price designed to advantage Infantino. *See* Dkt. No. 8 ("App.") §§ III–IV.

Infantino developed the FFE proposal with a select group that included Kushner and Gregory B. Maffei and pushed it to the brink of a vote without consultation with the FIFA Council, the member associations, or any of the confederations, including UEFA; without any competitive sale process or independent valuation; and on the basis of a financial inducement to the very members asked to approve it. App. § III.B–C. The eleventh-hour exposure of this plan prompted an immediate and near-universal rejection by FIFA's members, confederations, senior FIFA officials, and the broader football community. App. § IV.A.

Infantino subsequently withdrew the proposal on August 1, 2026, and FIFA issued a public apology on August 5, 2026, which Infantino co-signed with FIFA Secretary General Mattias Grafström, a senior FIFA official who had reportedly been excluded from the drafting of the FFE proposal. This did not resolve—and, as set forth in the Application, could not resolve through those steps alone—the underlying governance failure and damage that the FFE debacle caused. App. § IV.B. Accordingly, UEFA and its Swiss counsel are contemplating a Swiss criminal proceeding against Infantino, and potentially other FIFA officials, for criminal mismanagement under Article 158 of the Swiss Criminal Code. App. § V.A.

Under Swiss law, criminal mismanagement is an *ex officio* offense that any individual or legal entity is entitled to report to the Swiss law enforcement authorities. UEFA—a Swiss association whose Member Associations' governance rights fixed by the FIFA Statutes were

disregarded, and whose members' commercial and reputational interests were directly and immediately affected by the FFE proposal—is precisely the type of complainant Swiss law contemplates for such a report. *See* Dkt. No. 3 ("Kurz Decl.") ¶¶ 22–24; App. § V.A. To develop the evidentiary record for that contemplated Swiss proceeding, UEFA seeks discovery from persons and entities in the United States who possess documents and communications concerning the origination, valuation, terms, and timing of the FFE transaction and the roles of Kushner, Maffei, J.P. Morgan, and their affiliated entities. App. § V.B.

Consistent with that objective, on August 27, 2026, UEFA filed this Application, directed at Thrive and Kushner in this District; a separate application in the Southern District of Florida, No. 1:26-mc-25872-JEM, directed at FIFA US; and an application in the District of Colorado, No. 1:26-mc-00158-NYW-TPO, directed at BANN Ventures, Inc., and its founder, Maffei. UEFA filed a fourth application the following day, also in this District, No. 1:26-mc-00436-AS, directed at J.P. Morgan Securities LLC, JPMorgan Chase Bank, N.A., and two individuals. FIFA US is a named respondent only in the Florida application.

On September 1, 2026, FIFA US filed the present Motion (Dkt. No. 15), asking the Court either to defer ruling on the Application pending resolution of the parallel Florida application, or, in the alternative, to permit FIFA US to oppose the Application no later than September 30, 2026. As FIFA US's Motion makes clear throughout, it has no basis for its intervention or protectable interests; rather, it seeks to protect the interests of Infantino and its Swiss parent. *See* Mot. at 2, 3, 6, 8, 10, 13. It is Infantino who is the target of UEFA's contemplated Swiss action, not FIFA US nor FIFA itself.

# ARGUMENT

## I. FIFA US CANNOT SATISFY THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT UNDER RULE 24(A)

The Court should deny FIFA US's request for intervention as of right, because it cannot claim a "direct, substantial, and legally protectable" interest that it seeks to protect through intervention. *Floyd v. City of New York*, 770 F.3d 1051, 1060 (2d Cir. 2014) (quoting *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010)). Intervention must be "based on a right which belongs to the proposed intervenor," not the interests of a different, non-party entity. *Vazman, S.A. v. Fidelity Int'l Bank*, 418 F. Supp. 1084, 1086 (S.D.N.Y. 1976) (quotation omitted); *see also Restor-A-Dent Dental Lab'ys, Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 875 (2d Cir. 1984) (holding insurer could not intervene in its insured's suit because "the transaction that is the subject matter of the action" belonged to the insured, not the insurer). FIFA US's own lead authority requires no different result: *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, 2026 WL 1078381, at *4–5 (S.D.N.Y. Apr. 21, 2026), reaffirms that a Rule 24(a)(2) movant must "claim an interest relating to the property or transaction that is the subject of the action" in its own right, and that the movant—not a third party—must show that interest is inadequately represented; indeed, the movant who successfully intervened there did so by asserting his own equitable ownership interest in specific property, not a parent or affiliate's interest. As discussed below, FIFA US cannot make that showing because the interests it invokes are not its own. Nor does *Barnes v. Security Life of Denver Ins. Co.* assist FIFA US: that out-of-circuit decision's description of the interest requirement as "a practical guide" to efficient joinder does not relax the Second Circuit's requirement that the interest be direct, substantial, legally protectable, and the movant's own. *See* 945 F.3d 1112, 1121 (10th Cir. 2019) (quotation omitted).

Here, the interests FIFA US invokes to support its request for intervention are not its own.

Specifically, FIFA US argues that intervention is necessary because "it has a direct interest in whether and under what conditions [UEFA's] application proceeds" and in restricting the "disclosure of FIFA's confidential business." Mot. at 2. As explained below, neither interest belongs to FIFA US; the first belongs to the individual named as the target of the contemplated Swiss criminal proceeding, FIFA's president, Infantino; and the second belongs to FIFA. FIFA US is a proxy, deployed by the actually interested parties to litigate their objections without being required to appear and without subjecting themselves to this Court's jurisdiction. Rule 24 does not authorize that kind of surrogacy.

### A. <u>FIFA US Does Not Have a Direct Interest in UEFA's Application</u>

The Second Circuit has long recognized that "the ultimate targets of a § 1782 discovery order issued to third parties,"—i.e., the "parties against whom the requested information will be used"—have "standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute." *Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (quotation omitted). Here, UEFA's Application is directed at obtaining evidence for use in a contemplated Swiss criminal proceeding against Infantino personally, for breach of his individual duties under Article 158 of the Swiss Criminal Code, not against FIFA (much less FIFA US). *See* App. at 1, 3, 37–39, 43–44, 46, 48–49. Thus, to the extent anyone has standing under the Second Circuit's framework, it is most directly Infantino: the person named as the target of the contemplated criminal proceeding, the person alleged to have pursued the FFE transaction "for his own benefit," and the person alleged to have "exploit[ed] FIFA's institutions for his own benefit." *Id.* at 3–4, 14.

Courts in this District allow those "ultimate targets" of the foreign proceedings to intervene in § 1782 proceedings because their interests, not a third party's, are directly affected. *See, e.g.*, *In re BM Brazil 1 Fundo de Investimento em Participações Multistratégia*, 2024 WL 555780, at *6 (S.D.N.Y. Jan. 18, 2024) (granting intervention where the discovery sought was to be used as

evidence against the intervenor in pending foreign litigation to which the intervenor was a party); *In re Hornbeam Corp.*, 2015 WL 13647606, at *3 (S.D.N.Y. Sept. 17, 2015) (same, where applicant "clearly represented that it intended to sue" the intervenor in the contemplated foreign proceeding).

Tellingly, the one person with an obvious stake in these Subpoenas—the FIFA President personally named as the target of the contemplated Swiss prosecution, and whose legal bills FIFA has agreed to pay[3]—has not appeared. Instead, FIFA US asks this Court to let it wage his defense by proxy, on his indemnitor's dime without requiring Infantino to submit to the forum whose process he seeks to defeat. In addition to being impermissible under Rule 24, this gambit is clear gamesmanship to avoid submitting to this Court's jurisdiction. Compounding the problem, FIFA US's Motion offers no explanation for why two separate subsidiaries—FIFA (Americas), Inc. and FWC2026 US, Inc.—must both intervene, what distinct interest each entity holds, or why one would not suffice. The Motion treats the two as interchangeable, asserting a single undifferentiated set of interests on behalf of their common parent, which only underscores that neither entity claims an interest of its own. If Infantino believed his own interests warranted intervention, the proper course is for him to move in his own name and bear the consequences—including scrutiny of his own contacts with this forum—of doing so. He has not done so, and FIFA US's Motion does not explain why the person *actually identified* as the target of the contemplated proceeding is absent from its own request for a seat at the table.

### B. FIFA US Does Not Have a Direct Interest in the Discovery Requested

Nor does FIFA US maintain a direct interest in the discovery requested by the Subpoenas.

[3] *See* Dan Sheldon, *FIFA Expected To Cover Gianni Infantino's Legal Costs As UEFA Considers Criminal Proceedings*, The New York Times (Sept. 2, 2026), https://www. nytimes.com/athletic/7558459/2026/09/02/gianni-infantino-fifa-legal-costs-uefa/.

Here too, FIFA US's Motion is explicit: the confidentiality interests FIFA US purports to protect through intervention belong to its Swiss parent, FIFA. Specifically, according to FIFA US, "***FIFA*** is the only party who will be substantially affected by the outcomes of these applications" and that disclosure of the requested discovery "would directly threaten ***FIFA's interests***." Mot. at 10, 12–13; *see also id.* at 12 (arguing that "FIFA U.S. [must] hav[e] an opportunity to protect and present ***FIFA's interests***") (emphases added). Put differently, FIFA US asserts no direct interest in the alleged confidential documents; those interests concededly belong to FIFA. Of course, a non-party's interest in someone else's Swiss-law arguments or in the confidentiality of someone else's records is not "a right which belongs to the proposed intervenor." *Vazman*, 418 F. Supp. at 1086; *see also Restor-A-Dent*, 725 F.2d at 875 (interest in the "transaction that is the subject matter of the action" cannot be supplied by a non-party's stake in the outcome of the litigation). And FIFA US's authorities do not compel a different result. In both *In re Polymer Solutions Int'l, Inc.* and *Detention Watch Network v. U.S. Immigration & Customs Enforcement*, the courts permitted intervention for a party seeking to protect its own confidential information—not the confidential information of a corporate parent. *See In re Polymer Sols. Int'l, Inc.*, 2019 WL 1239778, at *2–3 (D. Md. Mar. 18, 2019) (finding movant had a significantly protectable interest in the confidentiality of its own information and when it was the actual target of the underlying foreign proceeding); *Det. Watch Network v. U.S. Immigr. & Customs Enf't*, 2016 WL 11793613, at *1, 3 (S.D.N.Y. Sept. 1, 2016) (recognizing movants' confidentiality interests in their own unredacted contracts).

Nor can FIFA US supply the required interest under Rule 24(a) by describing itself as a "subsidiary" of FIFA or declaring itself the "best-positioned" representative of FIFA's purported interests. Mot. at 10, 13. The interest asserted to support intervention must belong to the proposed

intervenor, here, FIFA US itself, not to its parent. *See Restor-A-Dent*, 725 F.2d at 875; *Vazman*, 418 F. Supp. at 1086. If FIFA wished to assert these supposed interests, it was required to do so in its own name. Rule 24(a)(2) does not contemplate protecting the type of derivative interests FIFA US describes here.

FIFA US's separate argument that disposition of this Application will "[i]mpair" its interests by creating a risk of duplicative production or inconsistent treatment between this proceeding and the parallel Florida application fares no better. Mot. at 12. The impairment inquiry asks whether "as a practical matter, an adverse decision may compromise the party's claims"—but it presupposes a claim that belongs to the movant in the first place. *Republic of the Phil. v. Abaya*, 312 F.R.D. 119, 124 (S.D.N.Y. 2015) (quoting *Delaware Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500, 509 (S.D.N.Y. 2015)). FIFA US is not a subpoena recipient in this action; the Subpoenas here run to Thrive and Kushner, not to FIFA US. Because FIFA US has no cognizable interest of its own to impair, as explained above, *Abaya*'s impairment standard is never reached. To the extent FIFA US is concerned that this Court and the Southern District of Florida might reach different conclusions on similar legal questions, that is not a cognizable Rule 24(a)(2) impairment. And this purported concern provides no basis for FIFA US to intervene in a proceeding to which it is not a party in order to protect its position in a different proceeding to which it is a party.

## C. <u>Thrive and Kushner Are Already Represented by Capable, Well-Resourced Counsel</u>

Even if FIFA US could identify some interest of its own, intervention would still fail because that interest is already adequately represented by counsel for Thrive and Kushner, who, through the law firm of Quinn Emanuel Urquhart & Sullivan, LLP, have already entered an appearance and will have every opportunity to challenge the scope and propriety of UEFA's discovery requests. FIFA US identifies nothing Thrive and Kushner cannot or will not raise, nor

has it offered anything in its Motion to "rebut the presumption of adequate representation by the party already in the action." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179–80 (2d Cir. 2001) (citing *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (denying intervention as of right where proposed intervenor's interests sufficiently aligned with current party's interests). Rule 24(a)(2) simply does not entitle a movant to intervene merely because it believes it could litigate an issue more effectively, or would prefer additional voices at the table; it requires a showing that existing parties will not adequately protect the interest at stake. *See id.*; *Brennan*, 579 F.2d at 191.

## II. PERMISSIVE INTERVENTION IS IMPROPER BECAUSE IT WOULD UNDULY DELAY AND PREJUDICE UEFA'S RIGHTS

UEFA does not dispute that FIFA US's Motion was filed promptly after UEFA's Application; timeliness is not what dooms it. The Court should nonetheless deny FIFA US's request for permissive intervention because, in addition to the reasons described above in Section I, it would "unduly delay or prejudice the adjudication of the rights of the existing parties"—an additional consideration in considering a request for permissive intervention that remains committed to the Court's discretion even where the other requirements are met. *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000) (quotation omitted); *see also SEC v. Berman*, 2021 WL 2895148, at *1 (S.D.N.Y. June 8, 2021); Fed. R. Civ. P. 24(b)(3). Here, FIFA US's Motion—in particular, its alternative request "to permit [it] to oppose [UEFA's] application no later than September 30, 2026" (Mot. at 1)—would, by definition, cause undue delay. Specifically, FIFA US's proposed procedure—under which it would intervene, brief its opposition to UEFA's Application, and, presumably if the Application is granted, brief its objections a third time on a Motion to Quash—is at odds with the settled practice in this District and would inject undue delay and prejudice into what is designed to be a prompt proceeding.

### A. <u>FIFA US's Proposal Departs From This District's Settled *Ex Parte* Procedure</u>

Section 1782 applications in this District are routinely decided *ex parte*, with the target's objections reserved for a post-service motion to vacate or quash. It is "neither uncommon nor improper" for district courts to grant § 1782 applications *ex parte*, and the target's due process rights are fully protected because it "can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012); *accord In re Hornbeam Corp.*, 722 F. App'x 7, 11 (2d Cir. 2018) (finding "no prejudice stemming from the *ex parte* nature of the proceedings").

That is precisely the approach this Court adopted, and the Second Circuit affirmed, in *In re Youngpoong Corp.*, 2025 WL 3228034, at *1 (S.D.N.Y. Nov. 19, 2025) (Vargas, J.), *aff'd*, 2026 WL 1085046 (2d Cir. Apr. 22, 2026), and that this Court has followed in a series of recent decisions. *See In re Fundo de Investimento em Direitos Creditórios Não Padronizados*, 2026 WL 851348, at *2 (S.D.N.Y. Mar. 27, 2026) (Vargas, J.); *In re Sri Trang Gloves (Thailand) Pub. Co.*, 2025 WL 2411137, at *1 (S.D.N.Y. Aug. 20, 2025) (Vargas, J.); *In re Guriev*, 2025 WL 2381702, at *1 (S.D.N.Y. Aug. 15, 2025) (Vargas, J.). The Second Circuit recently reiterated the animating principle: § 1782 "merely acts as a gate designed to prevent abuses," and once the gate is opened, "the ordinary rules of discovery … will adequately protect" those with protectable interests. *In re SBK Art LLC*, 168 F.4th 68, 84 (2d Cir. 2026).

FIFA US asks the Court to depart from that ordinary procedure. It requests a pre-ruling merits round in which it would be heard on the Application itself. The Second Circuit has already rejected precisely that process: a respondent's insistence on being heard alongside the *ex parte* application is "without merit." *Gushlak*, 486 F. App'x at 217. That is especially so here, where FIFA US (as opposed to FIFA) is neither the owner of the confidentiality rights it invokes, Mot. at 2–3, 10–13, nor the target of the discovery UEFA seeks.

### B. FIFA US's Proposal Would Cause the Very Delay and Prejudice Rule 24(b)(3) Is Designed to Prevent

UEFA will be prejudiced by the unnecessary and avoidable delay that flows from FIFA US's proposal. FIFA US would have UEFA brief the same questions multiple times: once in opposition to the present Motion to Intervene; again in connection with FIFA's requested Opposition to UEFA's Application; and, if the Application is granted, a third time on a Motion to Quash that is sure to follow.

Multiplying the review in this way "unduly delay[s]" and "prejudice[s] the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). It also disserves at least one of the "twin aims" of § 1782—"providing efficient assistance to participants in international litigation[.]" *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004). Under FIFA US's proposal, UEFA would face at least a month of additional pre-ruling briefing before it could serve the first subpoena, without any offsetting benefit. *Cf. Girard St. Inv. Holdings LLC v. Petroleos de Venezuela, S.A.*, 2024 WL 4556124, at *2 (S.D.N.Y. Oct. 23, 2024) (denying permissive intervention because it "would unduly delay the present action, and for no obvious benefit").

The unwarranted nature of this delay is underscored by the weakness of the arguments FIFA US previews in its Motion. *See* Mot. at 6–8. None of the six arguments below withstand scrutiny, and each confirms that deferring UEFA's Application would not sharpen the issues—it would only delay their inevitable resolution.

***First***, FIFA US claims that UEFA cannot satisfy § 1782's "for use" requirement because it identifies no pending foreign proceeding. *Id.* at 6–7. The statute's most recently amended language, which FIFA US conspicuously omits, says otherwise, expressly encompassing proceedings "including ***criminal investigations conducted before formal accusation***." 28 U.S.C. § 1782(a) (emphasis added); *contra* Mot. at 6 ("Section 1782 authorizes discovery only when,

among other things, the requested materials are sought 'for use in a proceeding in a foreign or international tribunal.'") (quoting 28 U.S.C. § 1782(a)). Congress added this language in 1996 to "cement[] [§ 1782's] applicability to foreign criminal investigations." *In re Application for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proc.*, 773 F.3d 456, 461 (2d Cir. 2014) (concluding that a Swiss criminal investigation was "exactly the type of proceeding that the 1996 amendments to the statute were intended to reach"). The Supreme Court made clear in *Intel* that § 1782(a) "does not limit the provision of judicial assistance to 'pending' adjudicative proceedings," and that the proceeding for which discovery is sought "must be in reasonable contemplation, but need not be 'pending' or 'imminent.'" 542 U.S. at 247, 258. UEFA's Application details a concrete factual investigation, identifies the target (Infantino), the offense (criminal mismanagement under Article 158 of the Swiss Criminal Code), and the forum (the courts of Switzerland)—this is more than sufficient to satisfy the statutory threshold.

***Second***, FIFA US invites this Court to wade into the merits under Swiss law without acknowledging binding Supreme Court and Second Circuit authority that undercuts its position. The Supreme Court has been explicit that § 1782 does not empower the district court to sit in judgment on the substantive merits or procedural viability of the foreign proceeding. *Intel* rejected any "foreign-discoverability" requirement, holding that neither the statute's text, its legislative history, nor comity concerns justify importing such a threshold into the statute—grounds that counsel against district courts using § 1782 to second-guess how a foreign forum would treat the evidence. *See* 542 U.S. at 261–62. The Second Circuit has followed that logic in refusing to condition § 1782 relief on the district court's own view of the applicant's ability to prevail in the foreign proceeding. *See Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015) (cautioning against "speculative forays into [foreign] legal territories unfamiliar to federal judges" as "a costly, time-

consuming, and inherently unreliable method of deciding section 1782 requests") (quotation omitted).

***Third***, FIFA US argues that the U.S.-Switzerland Treaty of Mutual Legal Assistance in Criminal Matters ("MLAT"), rather than § 1782, is the appropriate mechanism to obtain the discovery UEFA seeks for use in the contemplated Swiss criminal proceeding. This proposition is foreclosed by binding authority. *See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 157 (2d Cir. 2022) (holding that the district court erred in denying § 1782 application based on availability of MLAT request); *see also IN RE: VSMPO-AVISMA CORP.*, 2026 WL 2272759, at *15 (S.D.N.Y. May 26, 2026) ("[A]ny argument that the application must be denied because the materials must be requested through MLAT is meritless.") (citing *In re Brookfield Infrastructure Partners L.P.*, 2025 WL 3215607, at *18–19 (S.D.N.Y. Nov. 18, 2025)).

***Fourth***, FIFA US asks this Court to deny discovery on the theory that UEFA's Application is a vehicle "for the purpose of harassment" and part of a "smear campaign" against FIFA and its leadership. Mot. at 1, 8. That framing does not survive even a cursory review of the record. UEFA's Application does not manufacture criticism; it documents criticism that senior FIFA officials, member associations, confederations and government officials in multiple countries voiced independently, contemporaneously, and repeatedly before UEFA filed anything in this Court. These include Arsène Wenger, FIFA's own Chief of Global Football Development, who called withdrawal of the proposal "absolutely necessary";[4] FIFA's own Secretary General, Mattias Grafström, who described the episode to FIFA staff as a "sad and reproachable series of events"

[4] Graham Dunbar, *Top FIFA Officials Wenger and Grafström Distance Themselves From Infantino's World Cup Sell-Off Plan*, AP News (Aug. 4, 2026), https://apnews.com/article/fifa-world-cup-private-investors-wenger-infantino-7a553620217d2b1299b0c8bea8b800cd.

that created "turmoil which is difficult to comprehend and accept";[5] the Confederation of North, Central America and Caribbean Association Football and the Asian Football Confederation, which separately raised "deep concerns about the lack of due process" and called for "good governance, transparency and meaningful consultation";[6] the Fédération Internationale des Associations de Footballeurs Professionnels, the global players' union, which called the process an "abuse of power";[7] European Leagues, representing approximately 1,300 European clubs;[8] members of the European Parliament;[9] members of the U.S. House Judiciary Committee;[10] and government leaders including the Prime Minister of the United Kingdom.[11] FIFA US asks the Court to believe that all of these institutions and individuals—including FIFA's own employees, some of whom have since resigned or been fired—were somehow enlisted in UEFA's "harassment" of FIFA and its leadership. Mot. at 8.

***Fifth,*** FIFA US's argument that UEFA is required to arbitrate a supposed dispute with

---

[5] *Id.*

[6] *Statement on Behalf of CONCACAF and Its 41 Member Associations*, CONCACAF (July 30, 2026), https://www.concacaf.com/competitions/concacaf/news/statement-onbehalf-of-concacaf-and-its-41-member-associations; *AFC Statement on the FIFA Forward Enterprise Proposal*, AFC (July 29, 2026), https://www.the-afc.com/en/more/afc_news.html/news/afc-statement-on-the-fifa-forward-enterprise-proposal.

[7] *FIFPRO Statement: FIFA Forward Enterprise*, FIFPRO (Aug. 5, 2026), https://www.fifpro.org/en/articles/2026/08/fifpro-statement-fifa-forward-enterprise.

[8] *See European Leagues Statement on FIFA*, European Leagues (July 29, 2026), https://europeanleagues.com/european-leagues-statement-on-fifa/.

[9] *See* Peggy Corlin and Vincenzo Genovese, *Exclusive: MEPs Demand Infantino Appear Before European Parliament Over FIFA's Private Investment Plan*, Euronews (July 31, 2026), https://www.euronews.com/my-europe/2026/07/31/exclusive-meps-demand-infantino-appear-before-european-parliament-over-fifas-private-inves.

[10] *See Ranking Member Raskin Calls Foul on FIFA President Infantino for Trump Bribery and Corruption Scheme*, U.S. House Judiciary Committee Democrats (July 27, 2026), http://democrats-judiciary.house.gov/media-center/press-releases/ranking-member-raskin-calls-foul-on-fifa-president-infantino-for-trump-bribery-and-corruption-scheme.

[11] *See Andy Burnham Joins Critics of FIFA's World Cup Private Investment Plan*, ESPN (July 28, 2026), https://www.espn.com/soccer/story/_/id/49473099/andy-burnham-joins-critics-fifa-world-cup-private-investment-plan.

FIFA fares no better—and, in any event, is not FIFA US's to make. As discussed, UEFA has no dispute with FIFA. It is pursuing a criminal proceeding against Infantino. Furthermore, FIFA's own arbitration clause reaches only football disputes among enumerated stakeholders and expressly excludes matters where "binding legal provisions specifically provide for or stipulate recourse to ordinary courts of law."[12] Criminal mismanagement under Article 158 of the Swiss Criminal Code is such an excluded matter: it is prosecuted by the Swiss State, not UEFA, under a binding Swiss criminal-law provision that channels it to the ordinary Swiss courts, and no FIFA rule can strip the Swiss State of that authority. UEFA's contemplated report under Article 301 of the Swiss Criminal Procedure Code is thus a public-law reporting channel, not an arbitrable dispute in disguise. FIFA US's reliance on *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619 (2022), fares no better: *ZF Automotive* held only that § 1782 discovery is unavailable in aid of private arbitration because a private arbitral panel is not a "foreign or international tribunal" within the meaning of the statute. *Id.* at 628. UEFA does not seek discovery "for use" in any arbitration; it seeks discovery for use in a contemplated Swiss criminal proceeding before the Swiss State's own courts, a paradigmatic "foreign or international tribunal" that *ZF Automotive* left untouched. *Id.*

***Sixth***, FIFA US's related contention that UEFA cannot show the "financial loss" element of Article 158 because the FFE proposal was withdrawn is a merits argument under Swiss criminal law committed to the Swiss prosecutor and courts, not a threshold question for this Court on a motion to intervene. *See Mees*, 793 F.3d at 299. It is also wrong, both because, as discussed in UEFA's Application, the FFE debacle has damaged the financial interests of the member associations of UEFA and FIFA, notwithstanding its eventual withdrawal, and because even the

---

[12] FIFA Statutes arts. 49–51 (2024), https://digitalhub.fifa.com/m/16d1f7349fa19ade/original/FIFA-Statutes-2024.pdf.

attempt of criminal mismanagement is independently punishable. *See, e.g.*, App. at 30, 37–38.

Moreover, the fishing-expedition and circumvention authorities FIFA US invokes in its Motion are equally unavailing, as each involved circumstances bearing no resemblance to UEFA's Application. *See, e.g.*, *In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *6–8 (S.D.N.Y. July 9, 2014) (denying discovery when no procedural mechanism existed to submit materials to any foreign tribunal and no concrete steps had been taken toward initiating a foreign proceeding); *In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*, 2015 WL 4040420, at *1, 7 (S.D.N.Y. June 29, 2015) (repackaged § 1782 petitions filed to circumvent prior adverse discovery ruling and fish for other foreign venues in which to sue); *In re Jagodzinski*, 2019 WL 1112389, at *4, *7–8 (S.D. Fla. Jan. 15, 2019) (applicant had filed two prior suits in the foreign forum with jurisdiction over the discovery targets and sought § 1782 discovery for a third suit in that forum without explaining why it bypassed the foreign court's own discovery mechanisms); *In re Postalis*, 2018 WL 6725406, at *3–4 (S.D.N.Y. Dec. 20, 2018) (applicant publicly admitted discovery's real purpose was a future U.S. lawsuit against the discovery target). UEFA, by contrast, has no prior adverse discovery ruling to evade, is not attempting to circumvent a foreign court's own discovery mechanisms, and presents no gap between its stated intentions and its concrete preparatory steps. To the contrary, UEFA is the anticipated complainant in a specifically identified Swiss criminal proceeding, and its Swiss counsel has opined that UEFA has standing to lodge a criminal complaint under Article 301 para. 1 of the Swiss Criminal Procedure Code, that the contemplated charge of criminal mismanagement under Article 158 is supported by the facts as known, and that the Swiss authorities are amenable to receiving evidence obtained through the § 1782 Applications. *See* Kurz Decl. ¶¶22–23, 26. Nor does *In re Application of Grupo Unidos por el Canal S.A.*, 2015 WL 1815251 (N.D. Cal. Apr. 21,

2015), FIFA US's sole authority granting permissive intervention in a § 1782 proceeding, support FIFA US's request. There, the proposed intervenor, Autoridad del Canal de Panama ("ACP"), had its own separate contract with the discovery target under which ACP held exclusive ownership rights in, and contractual confidentiality protections over, the very documents at issue—not a parent or affiliate's interest, and no party or non-party had already appeared with counsel to represent the interests at stake. *Id.* at *2, 4–6. Here, FIFA US disclaims any interest of its own, Thrive and Kushner are already represented by counsel who is capable of raising every objection FIFA US previews, and FIFA US seeks not merely to participate but to insert an entire extra round of pre-ruling merits briefing that the movant in *Grupo Unidos* never sought. *Grupo Unidos* therefore does not counsel intervention here; if anything, it underscores why intervention should be reserved for a movant defending its own interest rather than a corporate proxy defending someone else's.

In short, the Court would gain nothing by deferring its ruling for a month of additional briefing on arguments that do not improve with elaboration.

## CONCLUSION

For the foregoing reasons, UEFA respectfully requests that the Court deny FIFA US's Motion.

Dated: New York, New York
September 10, 2026

By: */s/ Andrew J. Levander*

Andrew J. Levander
**DECHERT LLP**
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: +1 212 698 3500
Facsimile: +1 212 698 3599
andrew.levander@dechert.com

Christina G. Sarchio
Scott E. Lerner
Benedict S. Bernstein (admitted *pro hac vice*)
Aimee C. Hwang (admitted *pro hac vice*)
**DECHERT LLP**
1900 K Street, N.W.
Washington, D.C. 20006-1110
Telephone: +1 (202) 261-3300
Facsimile: +1 (202) 261-3333
christina.sarchio@dechert.com
scott.lerner@dechert.com
benedict.bernstein@dechert.com
aimee.hwang@dechert.com

Ariel D. Smith (admitted *pro hac vice*)
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: +1 (215) 994-4000
Facsimile: +1 (215) 994-2222
ariel.smith@dechert.com

*Counsel for Applicant Union des Associations Européennes de Football (UEFA)*

**CERTIFICATION OF WORD COUNT**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this Memorandum of Law contains 6,053 words and complies with the word count limitations.

*/s/ Andrew J. Levander*
Andrew J. Levander