UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF UNION DES ASSOCIATIONS EUROPEENNES DE FOOTBALL FOR AN ORDER SEEKING DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | 26-MC-00431 (JAV)<br>26-MC-00436 (JAV)<br><br>OPINION AND ORDER |
| IN RE EX PARTE APPLICATION OF UNION DES ASSOCIATIONS EUROPEENNES DE FOOTBALL FOR AN ORDER SEEKING DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | |

JEANNETTE A. VARGAS, United States District Judge:

Before the Court are motions to intervene by FIFA (AMERICAS) INC. and FWC2026 US, INC. ("the US FIFA parties") in two related applications by the Union des Associations Europeennes de Football ("UEFA") for *ex parte* orders authorizing discovery for use in a foreign proceeding from Thrive Capital Management, LLC and Joshua Kushner ("the Thrive parties"), *see* 26-MC-00431, ECF No. 8 (the "Thrive Application"), and J.P. Morgan Securities LLC ("JPMS"), JPMorgan Chase Bank, N.A. ("JPMCB"), Mary Callahan Erdoes and Eric Menell (all four together, "the JPMorgan parties"), *see* 26-MC-00436, ECF No. 1 (the "JPMorgan Application"). The US FIFA parties move to intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. They ask in the alternative that the Court exercise its discretion to permit them to intervene under Rule 24(b). Since the US FIFA parties do not have a direct, substantial and legally

protectable interest in the Applications, the motions to intervene are **DENIED**.

**BACKGROUND**

This case concerns UEFA's petitions, pursuant to 28 U.S.C. § 1782, for orders authorizing it to take discovery from the Thrive parties and the JPMorgan parties "for use in a contemplated criminal proceeding to be brought against Gianni Infantino ("Infantino"), the President of Federation Internationale de Football Association ("FIFA"), in the courts of Switzerland." Thrive Application at 1; JPMorgan Application at 1. These applications seek discovery related to the FIFA Forward Enterprise ("FFE"). 26-MC-00431, ECF No. 15 ("Thrive Mem.") at 1. According to UEFA, the FFE was "Infantino's failed plan . . . to sell to a private investor consortium a permanent stake in the commercial and operational rights to the FIFA World Cup and FIFA's related events." 26-MC-00431, ECF No. 21 ("Thrive Opp'n") at 4. UEFA argues that FFE amounted to a "vehicle for Infantino and [a] small circle [of others] to acquire a permanent stake in and otherwise profit from FIFA's most valuable assets to the detriment of FIFA, its members, and other parties within the football family." Thrive Application at 2.

UEFA alleges that Kushner originated the FFE plan and discussed it with Infantino for "nearly a year" before a term sheet about the proposal was signed. *Id.* at 19. It also alleges that "Infantino unilaterally designated Thrive Eternal, a permanent-capital investment vehicle controlled by Joshua Kushner and affiliated with Thrive Capital, to lead the investor group" investing in FFE. *Id.* at 2.

UEFA alleges that FIFA was advised by the JPMorgan parties on the FFE

plan. JPMorgan Application at 3. UEFA says that the JPMorgan parties were "instrumental in the formation of FIFA's plans for FFE and secretly worked for months in support of the plan." *Id.* (cleaned up). More particularly, the alleged work performed included "compiling a global investor base . . ., pitching the deal, . . . assessing the risk associated with the plan . . . [and] performing a valuation of FFE." *Id.* at 3-4 (quotation marks omitted).

The US FIFA parties are a subsidiary of FIFA. Thrive Mem. at 2. The US FIFA parties are the targets of, and oppose, another of the Section 1782 applications that UEFA has made, namely *In re Ex Parte Application of Union des Associations Europeennes de Football*, No. 1:26-MC-25872-JEM (S.D. Fla.) (the "Florida Application" or "Fl. App."). Fl. App., ECF No. 1 at 41; *id.*, ECF No. 27. The US FIFA parties characterize the Florida Application as "substantially similar," Thrive Mem. at 2, and as concerning "the same proposed transaction, the same alleged misconduct, the same purportedly contemplated proceedings [and] substantially the same categories of discovery." *Id.*

## DISCUSSION

### A. Intervention as of Right

"On timely motion, the Court *must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action[] and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added).

Thus, under Rule 24(a)(2), intervention as of right will be granted when all four of the following conditions are met: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties. *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). "Failure to satisfy any one of these four requirements is a sufficient ground to deny the application." *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 241 (2d Cir. 2006) (cleaned up); *accord Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001).

UEFA opposes the motions to intervene on the ground that the US FIFA parties do not have "a 'direct, substantial, and legally protectable' interest in the subject matter of the action." *United States v. City of New York*, 198 F.3d 360, 365 (2d Cir. 1999) (quoting *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). The Court agrees.

It is well-established that in Section 1782 cases, "parties against whom the requested information will be used" in the underlying foreign litigation have a legally protectable interest sufficient to grant standing to object to the issuance of a subpoena. *See, e.g.*, *Application of Sarrio*, 119 F.3d 143, 148 (2d Cir. 1997). The US FIFA parties argue that they fall within this precedent, as UEFA "seeks discovery

for use as evidence against FIFA in purported Swiss criminal proceedings." Thrive Mem. at 10.

Yet UEFA seeks discovery for use in a contemplated Swiss criminal proceeding against Infantino and possibly other FIFA officials for criminal mismanagement under Article 158 of the Swiss Criminal Code. 26-MC-00431, ECF No. 3, ¶ 15. Nothing in this record indicates that the US FIFA parties, or even FIFA itself, will be parties in the contemplated criminal proceedings. Certainly the US FIFA parties have not alleged facts suggesting they would be defendants in such a proceeding. *See In re Hornbeam Corp.*, No. 14-MC-424, 2015 WL 13647606, at *2 (S.D.N.Y. Sept. 17, 2015) ("In evaluating whether the requirements for intervention are met, courts accept as true the non-conclusory allegations of the motion." (quotation omitted)), *aff'd*, 722 F. App'x 7 (2d Cir. 2018).

The US FIFA parties alternatively assert that they have an interest in protecting confidential FIFA information from disclosure to third parties. Thrive Mem. at 10. A party whose documents and information are at issue, including parties with confidentiality interests in the information sought, has a protectable interest in the disclosure of their information to a third party. *See, e.g.*, *In re Costa Pinto*, No. 22-MC-663, 2022 WL 4088012, at *4 (S.D.N.Y. Sept. 6, 2022); *In re Hornbeam Corp.*, 2015 WL 13647606, at *2. Yet the US FIFA parties nowhere claim that the documents and information that are the subject of the proposed subpoenas belongs to them. Rather they assert that the application "directly implicates FIFA-related communications, sensitive, confidential and proprietary

business information." Thrive Mem. at 11; *see also* 26-MC-00436, ECF No. 10 at 11 ("UEFA seeks communications involving FIFA, FIFA President Gianni Infantino, numerous named FIFA personnel, FIFA advisors, and other documents concerning FIFA and the FFE proposal."). In other words, the confidentiality interests the US FIFA parties seek to protect belong to their Swiss parent, FIFA. *Id.* at 10, 12-13.

The question for the Court, then, is whether the US FIFA parties can properly assert the interests of their parent. The US FIFA parties vaguely point to what they call their "role in presenting [FIFA's] interests in the United States." Thrive Mem. at 10. According to the proposed intervenors, "[a]s FIFA's U.S. subsidiary, FIFA U.S. is best-positioned to present those interests, including by making objections based on confidentiality, Swiss law, the § 1782 statutory requirements, and the *Intel* factors." *Id.* The US FIFA parties do not explain why FIFA itself is unable to advance these arguments on its own behalf, however. Nor do they explain why they would have a legally cognizable "role" in asserting FIFA's interests in this litigation, the source of their authority to do so, or why or how this role is split between the two proposed intervenor companies. The papers present little in the way of explaining the relationship between the various corporate entities.

The parent-subsidiary relationship between FIFA and the US FIFA parties, standing alone, does not provide the requisite legal interest. "A parent corporation and its subsidiary are regarded as legally distinct entities." *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Intern., Inc.*, 2 F.3d 24, 26 (2d. Cir. 1993).

While the US FIFA parties do not suggest which state or country's law applies to the corporate relations between them and FIFA, under New York law, exceptions to the legal distinctiveness of the personhood of parent and subsidiary corporations "are made [only] in two broad situations: to prevent fraud or other wrong, or where a parent dominates and controls a subsidiary." *Id.* The US FIFA parties have not alleged that either exception to the rule applies.

The US FIFA parties further argue that they have a direct, substantial, and legally protectable interest in the Applications because of the overlap with the Florida Application, which seeks discovery from the US FIFA parties. *See* Thrive Mem. at 10-11. Yet is unclear how this confers upon the US FIFA parties a legally protectable interest in whether similar discovery requests were also directed at the JPMorgan or Thrive parties.

Because the Court concludes that the US FIFA parties do not have a direct, substantial and legally protectable interest in the subject matter of these actions, they are not entitled to intervene as of right under Rule 24(a)(2).

### B. Permissive Intervention

Under Rule 24(b), the Court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Second Circuit has "recognize[d] the broad discretion of the district court when considering permissive intervention" under Rule 24(b). *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005). The rule nonetheless requires the Court to "consider whether the intervention will unduly

delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). When considering an application for permissive intervention, "[t]he court considers substantially the same factors" as for intervention as of right under Rule 24(a)(2). *R Best Produce, Inc. v. Shulman-Rabin Marketing Corp.*, 467 F.3d 238, 240 (2d Cir. 2006).

The Court has already decided that the US FIFA parties have no direct, substantial and legally protectable interest in the subject matter of this application. In light of this determination, the Court exercises its discretion to decline leave to intervene. The US FIFA parties seek to intervene "to request that the Court defer ruling" in this case pending a decision in the Florida Application, or "alternatively, . . . that the Court permit it to oppose the [A]pplication" before the Court rules on the Application. Thrive Mem. at 1. For the Court to grant either request would delay adjudication. It would, *ipso facto*, unduly prejudice UEFA to allow the US FIFA parties to further delay the adjudication of these matters where they do not have an interest in the outcome of the Applications.

**CONCLUSION**

Accordingly, the motions are **DENIED**. The Clerk of Court is directed to terminate ECF No. 14 in docket number 26-MC-431 and ECF No. 9 in 26-MC-436.

SO ORDERED.

Dated: November 12, 2026
New York, New York

Jeannette Vargas

JEANNETTE A. VARGAS
United States District Judge